## Ramsey et al. v. Mahoney's Ex'r et al.

March 17, 1944.

Richard J. Colbert for appellants.

J. C. Knight and Bradley and Bradley for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

This appeal questions the construction placed upon the will of Mrs. Mary Bradley Mahoney by the chancellor, who held that the fourth paragraph thereof was too uncertain and indefinite to be executed and that testatrix died intestate as to that part of her estate not specifically devised. The will was holographic and reads:

"In the name of God—Amen.

"I Mary Bradley Mahoney of Georgetown, Ky. do make this my last will and testament. I wish my executors to sell all my holdings and distribute the cash as follows:

"1st. I wish all debts and funeral expenses to be paid. I will $400.00 for mass stipends, for the repose of the souls of Bradley Family and my husband and myself, to be paid to the Pastor in charge of St. John's Church at time of my death with the exception of $100.00 of this amount, which I give to Fr. John H. Ramsey of Lexington, Kentucky, for mass offerings for the above mentioned.

"2nd. To St. John's Church the sum of $200.00

| | | | |
|---|---|---|---|
| James McNally & wife | " | " | 200.00 |
| Mayme Douglas | " | " | 100.00 |
| Bobby Mitchell | " | " | 50.00 |

Miss Lillie Kearney    "   "    25.00
Mrs. James Canan    "   "    50.00

"3rd. If any of these parties be dead at the distribution of my estate, their portion can be divided among the remaining ones.

"4th. Should there be any part of my estate remaining after all debts and bequests are paid I wish an addition sum given to Father Ramsey and Father Paul Ryan for masses for my husband myself and the deceased members of the Bradley Family.

"5th. I appoint the first National Bank of Georgetown, Ky. as executor of my estate.

"(Signed)   Mary Bradley Mahoney
"Aug. 14, 1942.

"This will is entirely in my own handwriting."

Following the will is a codicil also in Mrs. Mahoney's handwriting wherein she disposed of her household and personal effects among her friends.

Mrs. Mahoney was a widow without children and had no relatives nearer than cousins on her maternal side while her paternal relatives were unknown. She appears to have been a devout Catholic and while a lady of some education and refinement, a casual reading of her will shows that she was not familiar with legal documents and did not have an exact command of English. Her specific bequests in round numbers amounted to $1000 and her residuary estate covered by the fourth paragraph of the will amounted to $6000. Hence it is seen that if the chancellor's interpretation of the will is upheld, testatrix disposed of only one-seventh of her estate and died intestate as to the remaining six-sevenths thereof, although the codicil exhibits an intention upon her part to dispose of everything she possessed even to her clothing and bric-a-brac.

In construing a will courts will consider the conditions surrounding testator and will undertake to ascertain the motive which caused him to so express himself. Robinson v. Von Spreckelsen, 287 Ky. 705, 155 S. W. (2d) 30. A cardinal rule used in the construction of wills is that the intention of the testator, if possible, must be gathered from the will as a whole. Deering v. Skidmore, 282 Ky. 292, 138 S. W. (2d) 471. Another is that it is presumed testator intended to dispose of his

entire estate, which presumption is not overcome unless it is plainly and unambiguously expressed in the will, or by necessary implication; and if the instrument is susceptible of two interpretations, courts will prefer the construction which disposes of the entire estate. Medcalf v. Whitley's Adm'x, 290 Ky. 94, 160 S. W. (2d) 348, 140 A. L. R. 936. Still another rule is that a word may be substituted whenever necessary to carry out the seemingly plain, intention of the testator. Dockery's Ex'rs v. Dockery, 170 Ky. 194, 185 S. W. 849; Struss v. Fidelity & Columbia Trust Co., 182 Ky. 106, 206 S. W. 177.

Applying these principles to the paper under consideration and considering the will and codicil as a whole, we are constrained to the conclusion that Mrs. Mahoney's intention was to dispose of her entire estate. To give the will any other construction would leave her dying intestate as to six-sevenths of her estate to be distributed among kin no closer than cousins on her mother's side and to kin unknown to her on her father's side.

While we think the fourth paragraph of the instrument definitely shows the intention on Mrs. Mahoney's part to devise the residuary estate to Fathers Ramsey and Ryan for masses to be said for the repose of the souls of herself, her husband and the Bradley family, yet by resorting to the rule of substituting a word when necessary to carry out the seemingly plain intention of the testatrix and changing ''an'' to ''this'' and adding ''al'' to the word ''addition'' thereby coverting it into ''additional,'' for the sake of better and more exact English, we have the fourth paragraph reading:

''4th. Should there be any part of my estate remaining after all debts and bequests are paid I wish this additional sum given to Father Ramsey and Father Paul Ryan for masses for my husband myself and the deceased members of the Bradley Family.''

With this fourth paragraph thus reading it cannot be said with reason that it is indefinite or uncertain. To one steeped in the Catholic faith nothing is more important than that masses be said for the benefit of the souls of the departed. It cannot be doubted that $6000 is a large sum to be left to priests for masses to be said. In Coleman v. O'Leary's Ex'r, 114 Ky. 388, 70 S. W. 1068, and in Obrecht v. Pujos, 206 Ky. 751, 268 S. W. 564, bequests for the saying of masses were upheld and in the

former case $4000 was bequeathed for that purpose. However, we are not concerned with the amount Mrs. Mahoney left the two priests for the saying of masses as it was her property and she had the right to dispose of it for any legitimate purpose she saw fit. She was the last of her family and for the salvation of the souls of herself, her husband and the Bradley family against eternity $6000 was not such a large sum.

Appellee relies upon such cases as Hardin's Ex'r v. Hardin, 170 Ky. 736, 186 S. W. 893, and Winn v. William, 292 Ky. 44, 165 S. W. (2d) 961, to the effect that an heir will not be disinherited except by express words of the will. In the instant case Mrs. Mahoney excluded her heirs or next of kin by an express gift of her residuary estate to the two priests for masses to be said. Not having directed how it should be divided, it was her evident intention that it be divided equally between them.

In insisting that the fourth paragraph is too indefinite to be executed, appellee leans heavily upon the cases of Futrell v. Futrell's Ex'r, 224 Ky. 814, 7 S. W. (2d) 232; Blankenship v. Blankenship, 276 Ky. 707,, 124 S. W. (2d) 1060; Robinson v. Von Spreckelsen, 287 Ky. 705, 155 S. W. (2d) 30. An examination of these authorities reveals that the wording of the wills there under consideration and the circumstances surrounding the testators were such as to distinguish them from the case at bar. None of the uncertainty or indefiniteness appearing in the wills considered in those opinions exists in the paper now before us, therefore those authorities are not controlling here.

It is our opinion that the fourth paragraph of Mrs. Mahoney's will expresses a clear and definite intention to leave her residuary estate to the two priests therein named, although it might have been larger than she anticipated, for the all important purpose to her of having masses said for the souls of the departed.

The judgment is reversed with directions to enter one in conformity herewith.